## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE: HEATING OIL PARTNERS d/b/a THE OIL EXPRESS, <br><br> Debtor | CIVIL CASE NO.: 3:08-CV-1976 (CSH) <br><br> Bankruptcy Case No.: 3:05-51271 <br><br> **RULING ON BANKRUPTCY APPEAL** |

HAIGHT, Senior District Judge:

Appellant Church Mutual Insurance Company ("Church") appeals from the decision of the United States Bankruptcy Court for the District of Connecticut (Alan H.W. Shiff, *Judge*) granting the motion of American Home Assurance Company ("AHA"), for an order declaring a default judgment Church obtained against the debtor, Heating Oil Partners ("HOP"), and its wholly owned subsidiary , Beacon Oil ("Beacon"), in a New Jersey state court action ("New Jersey action") void *ab initio*.  Church contends that Judge Shiff erred by concluding that the default judgment was void because it violated the discharge injunction  arising under 11 U.S.C. §524 (a) and the order confirming HOP's plan of reorganization ("Confirmation Order").

Once HOP filed its Chapter 11 voluntary petition in bankruptcy, Church's New Jersey action against Beacon and later against HOP violated the automatic stay.  The subsequent default judgment Church obtained was void.   I conclude that Judge Shiff correctly held that the default judgment in the New Jersey state action was void *ab initio,* and affirm for the reasons set forth below.

## I.      BACKGROUND

In  reviewing the decision of the Bankruptcy Court, this Court considers only the

evidence presented to that court and made part of the record.[1]  The relevant evidence is as

follows.  HOP is a limited partnership that distributes heating oil and other petroleum products in

the Eastern United States, including ten states and the District of Columbia.   On December 18,

2002, HOP purchased the assets of Beacon Oil Company, Inc. (Beacon") and thus became its

successor in interest.  Beacon thereafter operated as a "d/b/a" of HOP.

Vroom Street Evangelical Church ("Vroom") owned a property located at 155 Vroom St.

in Jersey City, New Jersey.   Vroom purchased a heating system for the property from Beacon,

contracting for the sale, installation, maintenance, service, inspection, and operation of boiler

systems and their attendant chimney and flue exhaust pipes .   On October 5, 2003, a fire

occurred at the Vroom property, resulting in severe damage.   Vroom recovered its losses from its

insurer, Church.  Church then became subrogated to Vroom's rights.

Church filed an action in the Superior Court of New Jersey[2] on July 15, 2005, alleging

that Beacon had been negligent in the installation, servicing, and inspection of the heating system

on the Vroom property.  Church brought this action as a subrogee of Vroom's rights.

On September 26, 2005, HOP filed a voluntary petition for bankruptcy protection under

Chapter 11 of the Bankruptcy Code.   In that petition, HOP listed Beacon as one of its trade

names used ("d/b/a") in the last six years.  Upon the filing of the petition, the automatic stay

became effective immediately.  On June 2, 2006, HOP served Vroom with notice of the bar date

---

[1]See Range v. United States, 245 B.R. 266, 279 (S.D. Tex. 1999) (a district court, acting
as appellate court in a bankruptcy case, may only consider evidence that was presented before the
bankruptcy court and made part of the record).

[2]Church Mutual Insurance Company v. Beacon Oil Company, Inc., et al., Superior Court
of  New Jersey, Law Division, Hudson County, No. HUD-L-3664-05.

-2-

for claims.[3]   HOP did not any time list Church as a creditor for such notice.

On January 6, 2006, the Bankruptcy Court entered an Order Authorizing and Approving the Debtor's Assumption of Certain Insurance Agreements ("Assumption Order").   These insurance agreements included insurance coverage provided to HOP by AHA. [4]

On June 16, 2006, the Bankruptcy Court entered an Order Confirming the Debtor's First Amended Joint Plan of Reorganization ("Confirmation Order"). [5]  Two weeks later, on or about June 29, 2006, Church filed an amended complaint in the New Jersey action to name HOP as a defendant.  Neither Beacon nor HOP filed an answer or otherwise pled.  On April 30, 2007, the New Jersey Superior Court entered a default judgment against Beacon and HOP in the amount of $856,874.40.  Doc. 12, p. 9 ¶ D.

On July 3, 2008, AHA filed a motion in Bankruptcy Court to request an order that the default judgment entered against Beacon and  HOP in the New Jersey action be declared void because it  violated the discharge injunction and Confirmation Order.   Bankr. Case No. 05-

---

[3]See  Bankr. Case No. 05-51271 ("Bankr.") Doc. 531 (Certificate of Service filed 6/2/2006 - Vroom listed on p. 14 of Attachment).  See also Bankr. Doc. 893 (Transcript of Hearing before Judge Shiff on August 5, 2008), p. 5, l. 6-9.

[4]AHA and its insurance adjuster, AIG, asserted that the insurance provided to HOP included a $250,000 self-insured retention for which HOP is responsible.  Specifically, HOP is purportedly responsible for damages and expenses in defending litigation up to and including $250,000.   Bankr. Doc. 893 (Transcript of hearing before Judge Shiff, August 5, 2008), p. 4, l. 17-24.  The insurance policy at issue was not submitted to either the Bankruptcy Court or this Court.

[5]The Court hereby takes judicial notice of the Confirmation Order (Bankr. Doc. 584), which, by its terms, discharges the debtor "from any and all debts and claims that arose before the date and time of entry" of the order (June 16, 2006) and permanently enjoins all persons who may hold claims or equity interests from commencing or continuing actions against the debtor after the effective date (August 6, 2006).  Id., p. 20, ¶ 10(c),  p. 22, ¶ 13; Bank. Doc. 950, p. 1, ¶ 3 (sets forth effective date as August 6, 2006).

51271 ("Bankr."), Doc. 879.   Church filed a response in objection to the motion  (Bankr.  Doc. 889) and AHA filed a supplemental memorandum ( Bankr. Doc. 895).  The Bankruptcy Court held two hearings[6] and on August 20, 2008 granted AHA's motion, thereby declaring the default judgment void *ab initio*.  Bankr.  Doc. 896.

On September 2, 2008, Church filed a motion to reconsider the Bankruptcy Court's decision.  Bankr.  Doc. 901.   AHA and HOP filed  replies.  Bankr.  Doc.  906 & 907.  The Bankruptcy Court held a hearing and concluded that it had "not heard anything new."  Bankr. Doc. 941,  p. 11, l. 2-6.  It thus denied Church's motion for reconsideration.  Bankr.  Doc. 920.

Church then brought the present appeal before this Court, filing its notice of appeal and statement of issues on appeal on December 29, 2008.   Doc. 1 & 3.  Church seeks this Court's ruling on the following issue:  "Did the Bankruptcy Court err in granting American Home Assurance Company's Motion to Declare Default Judgment Void?"


II..   **JURISDICTION**

A.   **This Court has jurisdiction pursuant to 28 U.S.C. § 158(a)(1).**

As a preliminary matter, this Court notes that it has jurisdiction to rule on AHA's appeal pursuant to 28 U.S.C. §158(a)(1) .   Title 28 section 158(a)(1) confers jurisdiction on the "district courts of the United States . . . to hear appeals (1) from final judgments, orders, and decrees" of the bankruptcy court.  28 U.S.C. §158(a).   See, e.g., In re Fugazy Express, Inc., 982 F.2d 769, 774 (2d Cir. 1992) (recognizing that district court rules on a bankruptcy matter as an appellate

---

[6]The hearings were held on August 5 and August 19 of 2008.  Bankr. Doc. 893 & 902 (transcripts of hearings).

court pursuant to § 158(a)); In re White, 183 B.R. 356, 358 (Bankr. D. Conn. 1995) (district court has jurisdiction to hear an appeal from a final judgment, order or decree of bankruptcy court pursuant to section 158(a)).[7]

**B**.     **The Rooker-Feldman doctrine does not preclude this Court from determining whether the New Jersey state action violated the automatic stay and/or the discharge injunction under the Bankruptcy Code.**

In its brief and at oral argument before this Court, Church argued that the Rooker-Feldman doctrine precludes federal courts from reviewing the final state court judgment in the New Jersey action.  Doc. 26 (Transcript of Hearing on June 18, 2009), p. 16, l. 19 to p. 17 to l. 15; Doc. 22 (Church's Brief),  p. 18-19.   Church claims that, under that doctrine, a federal court may not review and reject "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced."  Doc. 22, p. 19 (quoting Exxon Mobil Corp. v. Saudi Basic Industrial Corp. , 544 U.S. 280, 291, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005)).

Church further contends that the state court judgment "was not a modification of the discharge injunction" under the Bankruptcy Code so it is not subject to a federal court's review:

> "If the debt was discharged, then the state-court judgment was a modification of the discharge order and is void ab initio.  If the debt was not discharged pursuant to the bankruptcy court's discharge order, then the state-court judgment was not a modification of the discharge order and the Rooker-Feldman Doctrine would bar federal-court jurisdiction."

Doc. 22, p. 19, para. 1.

---

[7]Federal Rule of Bankruptcy Procedure 8001 then sets forth the procedure for "[a]n appeal from a judgment, order, or decree of a bankruptcy judge to a district court."  Fed. R. Bankr. P. 8001.

Church concludes that, since it did not receive notice of HOP's bankruptcy, its New

Jersey claim was never discharged under the Confirmation Order.[8]  Therefore, the Rooker-

Feldman doctrine bars this court's review of the New Jersey default judgment.

However, Church is mistaken in its understanding of the applicability of Rooker-

Feldman.  The doctrine has a very narrow application and does not bar a federal court from

reviewing a state court action to determine if it violates the Bankruptcy Code.  Simply stated, the

doctrine does not apply in this proceeding.

In Rooker v. Fidelity Trust Company, 263 U.S. 413, 416, 44 S.Ct. 149, 68 L.Ed. 362

(1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 486, 103 S.Ct.

1303, 75 L.Ed.2d 206 (1983), the Supreme Court held that its jurisdiction to review final state

court judgments under 28 U.S.C. § 1257 was exclusive.  Therefore, lower federal courts cannot

enter rulings that constitute appellate review of state court judgments.  Rooker-Feldman,

however, is a limited doctrine and seldom applies to prevent the application of relevant federal

law.  See, e.g., Lance v. Dennis, 546 U.S. 459, 464, 126 S.Ct. 1198, 1201, 163 L.Ed.2d 1059

(2006) (emphasizing the narrow reach of Rooker-Feldman).

In the bankruptcy context, courts in this Circuit have recognized that Rooker-Feldman has

little impact.  See, e.g., In Re Hopkins, 346 B.R. 294, 303 (Bank. E.D.N.Y. 2006) (Rooker-

Feldman does not apply when federal bankruptcy statutes permit  federal courts to set aside state-

court judgments in appropriate circumstances); In re DiGeronimo, 354 B.R. 625, 640-41 (Bankr.

E.D.N.Y. 2006) (Rooker-Feldman does not apply where debtor asks Court to determine whether

---

[8]For additional discussion regarding Church's claim regarding lack of notice, see section
IV. B. 5, infra.

the defendants violated the discharge injunction under Section 524).

As the Court explained in <u>In re Ehmke</u>, 2006 WL 1994904 at * 3 (E.D.N.Y. 2006):

"Congress' power under Article I of the Constitution to enact uniform bankruptcy laws such as the Bankruptcy Code necessarily means that state court judgments will be treated differently, with less or even no effect, then [sic] they would be treated in state court. This is not regarded as 'second-guessing' the merits decided by the state court, which is all that Rooker-Feldman seeks to prevent.  It is merely a necessary incident of enforcing the provisions of the Bankruptcy Code."

The <u>Ehmke</u> court then clarified that the doctrine has little or no application to bankruptcy proceedings that invoke rights under the Bankruptcy Code.  Thus, bankruptcy courts may modify, avoid,  and even discharge state judgments.  <u>Id.</u>  (citing <u>In re Sasson</u>, 424 F.3d 864, 871 (9th Cir. 2005)).

Specifically, the Rooker-Feldman doctrine does not bar a federal court from determining whether a debt has been discharged and whether the discharge injunction has been violated.  <u>In re Farrell</u>, 293 B.R. 99, 100 (Bankr. D.Conn. 2003).  <u>See also</u> <u>In re Cruz</u>, 254 B.R. 801, 811 (Bankr. S.D.N.Y. 2000) (Rooker-Feldman does not apply if Section 524 voided judgment that was determination of person liability of debtor with respect to discharged debt); and <u>In re Pavelich</u>, 229 B.R. 777, 783 (9th Cir. B.A.P. 1999) ("bankruptcy court erred when it ruled that the Rooker-Feldman doctrine stripped it of jurisdiction to consider whether the state court's judgment was void *ab initio* and whether the discharge injunction had been violated").

There is a specific exception to the application of the Rooker-Feldman doctrine when the state court judgment is void.  <u>In re Dabrowski</u>, 257 B.R. 394, 406 (Bankr. S.D.N.Y. 2001).  The rationale for the exception is that "because a void judgment is null, vacating such a judgment is a mere formality and does not intrude upon the notion of mutual respect in federal-state interests."

Id.  By its plain terms, section 524(a) applies to judgments obtained before and after the entry of the discharge order.  "Not only is any judgment obtained by the creditor before the entry of the discharge order (usually one obtained pre-petition, since given the automatic stay, judgments on pre-petition debts would rarely be entered after the petition's filing) void; so is any judgment obtained after entry of the discharge order."  Id.

In the present case, this Court is being asked to determine whether the New Jersey default judgment is void as contrary to the provisions of the Bankruptcy Code.  The Rooker-Feldman doctrine does not, therefore, apply.


### III.   STANDARD OF REVIEW

 In reviewing an appeal from a bankruptcy court, a district court applies a "clearly erroneous" standard to findings of fact and a *de novo* standard to conclusions of law.   See, e.g., In re Chateaugay Corp., 89 F.3d 942,  946 (2d Cir. 1996) ;  In re Ionosphere Clubs, Inc., 922 F.2d 984, 988 (2d Cir. 1990), cert. denied, 502 U.S. 808, 112 S.Ct. 50, 116 L.Ed.2d 28 (1991);   In re Manville Forest Products Corp.,  896 F.2d 1384, 1388 (2d Cir. 1990);  In re FYM Clinical Lab., Inc., 1997 WL 666238 at *3 (S.D.N.Y. 1997).  Similarly, a district court ruling on a motion for relief from a judgment is reviewed *de novo*.  Central Vermont Public  Service Corp. , 341 F.3d 186, 189 (2d Cir. 2003) (a district court's ruling on a Rule 60(b)(4) motion was reviewed *de novo* where movant sought relief from judgment on the basis that it was void).

 In the present case, Bankruptcy Judge Shiff ruled on AHA's motion as a matter of law, holding  that the default judgment was void because it violated the discharge injunction and Confirmation Order.  Bankr. Doc. 896.  There were no disputed issues of fact.  This Court

reviews the Bankruptcy Court's decision *de novo*.

## IV.   DISCUSSION

### A.   AHA has standing as "party in interest" to bring its motion to declare the default judgment in the New Jersey action void.

Throughout the proceedings in the Bankruptcy Court, Church repeatedly contested AHA's standing to bring its motion to declare the default judgment in the New Jersey action void.[9] Counsel for Church has asserted that only debtors and creditors have the right to litigate the issue of a discharge injunction.

Judge Shiff, however, concluded that AHA is the "actual victim" of the default judgment at issue – i.e., "the insurance company who is indemnifying the debtor."[10] Bankr. Doc. 893 (Transcript of Hearing, August 5, 2008) p. 9, l. 14-15. AHA thus had standing to proceed with its motion. This Court agrees.

Under section 1109(b) of the Bankruptcy Code, a "party in interest . . . may raise and may appear and be heard on any issue in a case" under Chapter 11. 11 U.S.C. §1109(b).[11] The term

---

[9]See, e.g., Doc. 22, p. 3-8; Bankr. Doc. 893 (Transcript of Hearing before Judge Shiff on August 5, 2008), p. 8, lines 4-7.

[10]Standing is a constitutional requirement and a ''threshold question in every federal case, determining the power of the court to entertain the suit.'' Baron & Budd, P.C. v. Unsecured Asbestos Claimants Committee., 321 B.R. 147, 157-58 (D.N.J. 2005) (quoting Warth v. Seldin, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). Under constitutional analysis, a party must have an "injury in fact" to have standing. See Doc. 14 (Appellee AHA's Brief), p. 17-18. The injury to AHA, as stated below, is the pending default judgment in the New Jersey action, for which AHA has indemnified HOP in full or in part.

[11]The entire provision of 11 U.S.C. §1109(b) reads as follows:

"(b) A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may

"party in interest" is an elastic term "designed to give the Court great latitude to insure fair representation of all constituencies impacted in any significant way by a Chapter 11 case."  In re Johns-Manville, 36 B.R. 743, 754 (Bankr. S.D.N.Y. 1984).  "Party in interest" is meant to include parties whose rights are directly affected by the bankruptcy proceedings.  See also In re Comcoach Corp., 698 F.2d 571, 573 (2d Cir. 1983) (under section 362(d), a party in interest seeking relief from an automatic stay is the one who has a substantive legal right sought to be enforced).

Bankruptcy courts have determined whether an entity is a "party in interest" on a case by case basis.  Such courts have commonly used the test of whether the party has a "sufficient stake" in the proceeding to enable the party to participate.  In re Marcus Hook Development Park, Inc., 153 B.R. 693, 697 (Bankr. W.D. Pa. 1993); In re Torrez, 132 B.R. 924, 933-34  (Bankr. E.D. Cal. 1991); In re Public Service Company of New Hampshire, 88 B.R. 546, 550-51 (Bankr. D. N.H. 1988); In re UNR Industries, Inc., 71 B.R. 467, 471 (Bankr. N.D. Ill. 1987).

Moreover, bankruptcy courts have recognized that a liability insurer is a "party in interest" where the debtor's insurer is responsible to pay claims brought against the debtor.  In re  Standard Insulations, Inc., 138 B.R. 947, 950 (Bankr. W.D. Mo. 1992).[12]   The phrase "party in interest" applies to those who have some interest in the assets of the debtor being administered in the case. Id.  The proper inquiry for the court was thus "whether the prospective party in interest has a

_____

raise and may appear and be heard on any issue in a case under this chapter."

[12]See also In re Keck, Mahin & Cate, 241 B.R. 583 (Bankr. N.D. Ill. 1999)(debtor law firm's malpractice insurer had standing to object to plan confirmation provisions that affected its interests as third-party indemnitor); In re Congoleum Corp., 362 B.R. 167 (Bankr. D. N.J. 2007) (insurer had standing to object to plan confirmation where plan involved funds to be provided by insurer).

sufficient stake in the proceeding so as to require representation." Id. (quoting In re Amatex, 755 F.2d 1034, 1042 (3d Cir. 1985)).  Where the debtor's insurance was the "only asset of consequence," the true asset sought by personal injury claimants against the debtor, the insurers were parties in interest with standing to object to claims against the estate.  Id.[13]

In the present case, AHA has a sufficient stake in HOP's bankruptcy proceeding to justify its participation and application to the Bankruptcy Court for relief.  As such, it is a "party in interest" entitled to bring the motion at issue.  Church repeatedly asserted that it waives its claims against HOP's assets and seeks only HOP's liability insurance proceeds.  See, e.g., Bankr. 902 (Transcript of hearing before Judge Shiff,  August 19, 2008)  p. 3, l. 11-16; p. 11, l. 2-4; and p. 15, l. 12-14; Bankr. Doc. 889, p. 8, ¶ 21.   Taking Church at its word, then, as in In re Standard Insulations, supra, insurance proceeds are the central asset sought by Church.   As the liability insurer of HOP,  AHA would  indeed be impacted by the default judgment against HOP in the

_____

[13]In re Standard Insulations may be distinguished from In re Refco Inc., 505 F.3d 109, 118-119 (2d Cir. 2007), a recent Second Circuit case cited by Church in its brief to contest AHA's standing.  In that case, the Second Circuit clarified that the term "party in interest" would be determined on a case by case basis.  The Court rejected the notion that a group of a creditor's investors, who contested the validity of the creditor's agreement with the debtor under the discharge plan, were "parties in interest."  The conflict between the creditor and its numerous investors, was a complicated internal conflict of the creditor, focusing on the fiduciary duty of the creditor's officers to the creditor's investors.  The Second Circuit thus clarified that a "[b]ankruptcy court is a forum where creditors and debtors can settle their disputes **with each other**.  Any internal dispute between a creditor and that creditor's investors belongs elsewhere." Id., 505 F.3d at 118  (emphasis in original). Where the claim was an internal dispute and thus could not be asserted against the debtor, it was more properly resolved outside of the bankruptcy proceedings.
In the present case, AHA is not attempting to litigate an internal conflict or to resolve any differences it may have with HOP in the bankruptcy proceedings.  Rather, it is litigating the validity of a creditor's default judgment on a claim for which it has indemnified the debtor.

New Jersey action. [14]   Moreover, even if a self-retention clause may be found in the policies at issue, HOP would only be responsible for litigation damages up to $250,000.[15]  AHA would then be liable for the remainder of the $856, 874.40 default judgment in the New Jersey action  (i.e., a total of more than $600,000).

**B.**    **Church's New Jersey action against Beacon violated the automatic stay and is thus void *ab initio*.**

The Court is mindful that Church has framed its appellate issue in terms of whether the default judgment is void as  a violation of the discharge injunction and the Confirmation Order. At various points during oral argument before Judge Shiff, however, the effect of the automatic stay was discussed by the Court and the attorneys.[16]   Moreover, when necessary, a court is obliged to raise the issue of the application of the automatic stay *sua sponte*.  In re 222 Liberty Associates, 110 B.R. 196, 200 (Bankr. E.D. Pa. 1990).  See also Association of St. Croix Condominium Owners v. St. Croix Hotel, 682 F.2d 446, 447-48 (3d Cir. 1982); In re Sciortino,

---

[14]AHA asserts that it is contractually obligated to provide HOP with commercial general liability coverage.  The Bankruptcy Court's Assumption Order maintains the continuing existence of such AHA policies, potentially covering the liability sought by Church against HOP. Bankr. Doc. 895.  The extent of AHA's liability with regard to those policies has not been fully determined.  AHA, however, has stated that it has a "direct pecuniary interest" in that Church seeks to recover monies under the insurance policy AHA issued to HOP.  Doc. 14 (AHA's Brief), p. 8-9.

[15]AHA asserts that the insurance provided to HOP has a self -retention clause such that HOP is liable for damages and the expenses of litigation up to the first $250,000 in damages and costs resulting from Church's claims.  The specifics of the policies at issue remain undetermined, however, because the language of the policies has not been entered into the record.   The text of such policies may become the subject of an evidentiary hearing should Church decide to file a motion in the bankruptcy court to reopen HOP's case.

[16]See, e.g., Bankr. Doc. 893, p. 20, l. 13 to p. 21, l. 3  & Bankr. Doc. 902, p. 14,  l. 22 to p. 15, l. 3 and p. 16, l. 14-18.

114 B.R. 423, 426 (Bankr. E.D. Pa., 1990).   In the instant case, Church's New Jersey action violated the automatic stay that went into effect upon HOP's filing of its Chapter 11 petition.   It is thus void *ab initio*.

1. <u>**Beacon is encompassed by HOP's voluntary petition.**</u>

With respect to HOP's bankruptcy proceeding, Beacon is encompassed within HOP's voluntary petition as a trade name of HOP.  On September 26, 2005, when HOP filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, it explicitly listed  "Beacon Oil" as one of its trade names used  ("d/b/a") within the last 6 years.  <u>See</u> Bankr. Doc. 906-5, Exhibit E, Part One,  p. 11 (page 7 of 8 of HOP's list of trade names).  Moreover, HOP owned all of Beacon's assets since December 18, 2002, making them property of HOP at the time HOP filed for bankruptcy.  Church itself treated Beacon as a common entity with HOP in the New Jersey action, describing HOP as Beacon's "successor in interest . . .  liable for the acts or omissions of its predecessor " in the Amended Complaint  (Bankr. Doc. 889-1,  p. 2,  ¶ 8) and mailing the default judgment to Beacon and HOP at the same address.  <u>See</u> Bankr. Doc. 941 (Transcript of Hearing before Judge Shiff, November 4, 2008),  p. 8. l. 15 to p. 9, l. 1.  Beacon should thus be treated as a common entity with HOP under Chapter 11.[17]

---

[17]At one point, HOP's attorney made a comment, attempting to distinguish Beacon Oil's assets from its existence as a shell entity.   Bankr. Doc. 941 (Transcript of Hearing before Judge Shiff, November  4, 2008), p. 10, l. 4 to p. 11, l. 1.  He stated that it would "be fine" for Church to pursue Beacon merely as a shell entity and have a judgment with "no ramifications with respect" to HOP.  <u>Id.</u>, p. 10, l. 15-19.  If , however, Church was really seeking to recover from HOP, pursuing Beacon as a trade name of HOP, that action would be void.

2.     **Even if Beacon were not encompassed as a debtor by HOP's voluntary petition, Beacon has such unity of interest with HOP that it is still protected by the automatic stay**.

It is well settled that the automatic stay under section 362(a) of the Bankruptcy Code ordinarily applies only to the debtor and not to co-defendants.   Trustees of Sickness and Accident Fund of Local One-L v. Philips Winson, Inc., 2005 WL 273017 at *2 (S.D.N.Y. 2005).   See also Teachers Insurance & Annuity Association v. Butler, 803 F.2d 61, 65 (2d Cir.1986); 3 Collier on Bankruptcy § 362.03(3)(d) (15th ed. 2002).   Nonetheless, the Second Circuit has held that courts may apply the automatic stay under 11 U.S.C. § 362(a) to non-debtors in limited circumstances "when a claim against a non-debtor will have an immediate adverse economic consequence for the debtor's estate."   Queenie, Ltd. v. Nygard International, 321 F.3d 282, 287 (2d Cir. 2003).

Examples of such an immediate adverse effect cited in Queenie include actions where "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant" (quoting A.H. Robins Co. v. Piccinin, 788 F.2d 994, 999 (4th Cir. 1986)).   See also In re North Star Contracting, 125 B.R. 368, 370 (S.D.N.Y. 1991) ("where the debtor and the non-bankrupt party can be considered one entity or as having a unitary interest, a section 362(a)(1) stay may suspend an action against a non-bankrupt party");   In Re Neuman, 128 B.R. 333, 337 (S.D.N.Y. 1991) (where Chapter 11 debtor owned 78% of parent company stock and subsidiaries were wholly owned by parent company, court held "there is such an identity between the entities as to render the state court suit [against the parent company and subsidiaries] in violation of the [automatic] stay").   An automatic stay may thus operate to protect a non-debtor from actions that would have a significant impact on the debtor.   See, e.g., MacArthur Company v. Johns-Manville Corporation, 837 F.2d 89, 92-93 (2d Cir. 1988) (bankruptcy court had authority

-14-

to enjoin suits against bankrupt's insurers where tort claimants sought to collect insurance proceeds on basis of debtor's conduct).

In the present case, HOP purchased all of Beacon's assets as of December 18, 2002.   HOP listed Beacon as a trade name and "d/b/a" entity in its voluntary petition.  Bankr. Doc. 906-5, Exhibit E, Part One,  p. 11 (Voluntary Petition at p. 3 of 8 on list of "trade names, used within the last 6 years").  Moreover, Church itself asserted that HOP would be liable for the acts or omissions of its predecessor Beacon.  Bankr. Doc. 889-1 (Amended Complaint),  p. 2,  ¶ 8.  Thus, any liability found against Beacon would have a direct economic impact on HOP.   Under these circumstances, the state court action against Beacon should have been automatically stayed upon HOP's filing of its petition for bankruptcy on September 26, 2005.[18]

### 3.    An action against a debtor entity violates the automatic stay and is thus void *ab initio*.

Under Section 362 of the Bankruptcy Code, the filing of a petition in bankruptcy automatically stays the commencement and continuation of judicial proceedings against the debtor

---

[18]Cases in which the stay was not extended are distinguishable from the present case in that the co-defendants were not so related to the debtor that there would be a direct economic impact on the debtor if the co-defendant were found liable.  See, e.g., In Re Johns-Manville Corp., 26 B.R. 405, 410-17 (Bankr. S.D.N.Y. 1983) (liability of co-defendants in joint tortfeasor asbestos suit not directly attributable to debtor, as it would be if co-defendants were key employees of debtor); Trustees of Sickness and Accident Fund of Local One-L v. Philips Winson, Inc., 2005 WL 273017 at *2  (S.D.N.Y. 2005) (co-defendant of debtor, who was sued on contract claim, had agreed to "be personally and individually liable" for certain amounts due plaintiff; adjudication of amount co-defendant owes would have no immediate impact on estate of debtor).

or the debtor's property.  11 U.S.C. 362(a).[19]  See, e.g., In re Enron Corp., 306 B.R. 465, 475

(Bankr. S.D.N.Y. 2004).  "The scope of the automatic stay is very broad.  The debtor is protected

from suits; property of the estate is protected from action by creditors; property of the debtor . . . is

protected from action by creditors with regard to claims that arose prior to the commencement of

the bankruptcy case; and creditors are prohibited from undertaking offsets."  Norton Creditors'

Rights Handbook, § 10:2 (2008).  Moreover, courts have interpreted Bankruptcy Code § 362(a)

broadly to hold that an "action that will in any way impinge on the ability of a debtor to utilize its

property or operate its business" constitutes a violation of the automatic stay.  Id.[20]

The automatic stay promotes two principal purposes: (1) it provides the debtor with a

"breathing spell" from its creditors and (2) it "allows the bankruptcy court to centralize all

disputes concerning property of the debtor's estate in the bankruptcy court so that reorganization

---

[19]Section 362 of the Bankruptcy Code is captioned "Automatic stay" and states in relevant part:

"(a)  Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, . . . operates as a stay, applicable to all entities, of--

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; . . ."

11 U.S.C. § 362(a) (1).

[20]Once in effect and absent relief afforded by a court, "the stay survives until the case is closed or dismissed or the debtor is discharged."  Norton Creditors' Rights Handbook, § 10:2; see also 11 U.S.C. § 362(c)(2)(A)-(C).  A creditor who is affected by the automatic stay may, however,  seek to have it modified or terminated .  Id.  A request to modify, terminate, condition or otherwise obtain relief from the automatic stay is made by the filing of a motion.  Fed. R. Bankr. P. 4001 and 9014.  The court then holds a hearing within 30 days after the filing of the motion.  11 U.S.C. § 362(e).

can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas." In re

Ionosphere Clubs, Inc., supra, 922 F.2d at 989. [21]   The automatic stay is thus one of the most

fundamental debtor protections provided by the bankruptcy laws.  Essentially, it protects the

debtor from the harassment of lawsuits in other jurisdictions[22] as it reinforces the exclusive

jurisdiction of the bankruptcy court.[23]

In the Second Circuit, as a general rule, any action taken in violation of the automatic stay

is void *ab initio* and thus without effect.  Eastern Refractories Co., Inc. v. Forty Eight Insulations

Inc., 157 F.3d 169, 172 (2d Cir. 1998) (automatic stay is effective immediately upon filing of

bankruptcy petition, and any subsequent proceedings against debtor or debtor entities are void);

Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 527 (2d Cir. 1994) (automatic stay is effective

upon the filing of the petition and any proceedings described in section 362(a)(1) are void and

without vitality if they occur thereafter); In re Colonial Realty Co., 980 F.2d 125, 137 (2d Cir.

1992)("stay imposed by § 362(a) is automatically applicable to all entities without any need for

intervention of any court or ruling"); In re Govola, 306 B.R. 733, 736 (Bankr. D.Conn. 2004)

("[i]n the Second Circuit, court and other actions which violate the automatic stay are void and

without effect"); In re Marine Pollution Service, Inc., 99 B.R. 210, 217 (Bankr. S.D.N.Y. 1989)

---

[21]See also In re WorldCom, 325 B.R. 511,  518 (Bankr. S.D.N.Y. 2005) ( through automatic stay, Congress provided essential protections to debtors and creditors by centralizing all disputes; In re Johns-Manville Corp., 57 B.R. 680, 685 (Bankr. S.D.N.Y. 1986) (automatic stay is necessary tool to "total disposition of all claims in a reorganization proceeding").

[22]Bohack Corp. v. Borden, Inc., 599 F.2d 1160, 1167 (2d Cir. 1979).

[23]Eastern Refractories Co., Inc. v. Forty Eight Insulations Inc., 157 F.3d 169, 172 (2d Cir. 1998) .

(action in violation of automatic stay is void even when there is no actual notice of existence of stay).

4.   **Notice is not required for an automatic stay to become effective**.

As its name suggests, an automatic stay is "automatic," requiring no affirmative act by the debtor other than the filing of a petition.  In re General American Communications Corp., 130 B.R. 136, 149 (S.D.N.Y. 1991).   The automatic stay thus becomes operative even if the creditor had no knowledge or notice of the filing of the bankruptcy petition or the entry of the automatic stay.  See  Rexnord Holdings, supra, 21 F.3d at 527,  In re 48th Street Steakhouse, Inc., 835 F.2d 427, 428-29 (2d Cir. 1987));  In re Marine, supra, 99 B.R. at 217 (citing Kalb v. Feuerstein, 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940)) ; In re Calder, 907 F.2d 953, 956 (10th Cir.1990);  In re Smith, 876 F.2d 524, 526 (6th Cir.1989); In re General American Communications Corp., 130 B.R. 136, 149 (S.D.N.Y. 1991) (automatic stay violation is self-executing because section 362 does not require notice be given); In re Morway, 2002 WL 34438674 at *5-6  (Bankr. D. Vt. 2002); In re Stockwell, 262 B.R. 275,  281 (Bankr. D. Vt. 2001). [24]

---

[24]Other circuit and district courts of other Circuits concur with the Second Circuit in holding that automatic stay operates without notice.  See, e.g., In re Soares, 107 F.3d 969, 975 (1st Cir. 1997) (automatic stay springs into being upon filing of bankruptcy petition without the need for any judicial intervention); Constitution Bank v. Tubbs, 68 F.3d 685, 691 (3d Cir. 1995)(automatic stay operates regardless of whether other parties to the stayed proceeding are aware that a bankruptcy petition has been filed);  In re Vierkant, 240 B.R. 317, 320-21 (B.A.P. 8th Cir. 1999) (automatic stay is triggered upon filing of bankruptcy petition so post-petition entry of default judgment was continuation of judicial proceeding within the meaning of section 362(a)(1) and thus a violation of stay);  In re 222 Liberty Associates, 110 B.R. 196, 200 (Bankr. E.D. Pa. 1990) ("[a]n action taken by a creditor in violation of the automatic stay is void, irrespective of the creditor's lack of knowledge of the bankruptcy filing and, hence, existence of the stay"); In re Martinez, 112 B.R. 46, 47-48 (Bankr. M.D. Ga. 1990) (creditor's suit violated automatic stay, even though "filed innocently;" thus judgment against debtor was void); Fields v. Demint, 107 B.R. 194, 194-95 (W.D. Mo. 1989)(filing of bankruptcy petition is "notice to the world" so

**5.** **After HOP filed its bankruptcy petition, Church's New Jersey action violated the automatic stay, rendering it void *ab initio*.**

In the present case, Church brought its New Jersey action against HOP's subsidiary Beacon on July 15, 2005.  When HOP filed its bankruptcy petition on September 26, 2005, the automatic stay went into effect and the New Jersey action became subject to the stay.[25]  By the time Church added HOP as a defendant in the New Jersey action on or about June 29, 2006, the Bankruptcy Court had already confirmed HOP's reorganization plan (on June 16, 2006).  Bankr. Doc. 584.  The state action, which was already void for violating the stay, later continued in violation of the discharge injunction and Confirmation Order as well.  Church then proceeded to obtain a default judgment against both Beacon and HOP on April 30, 2007.

Church contends that its New Jersey action is not void because Church did not receive notice of HOP's bankruptcy filing.[26]   Whether or not Church received notice is not relevant for

---

automatic stay becomes effective without actual notice).

[25]HOP listed "Beacon Oil" as one of its trade names used within the last 6 years in the attachments to its Chapter 11 petition.  See Bankr. Doc. 906-5, Exhibit E, Part One, p. 11 (page 7 of 8 of HOP's list of trade names).

[26]It is controverted in the record when exactly Church became aware of HOP's bankruptcy proceedings.  Church alleges that "it first learned of the existence" of HOP's Chapter 11 petition "post-confirmation."  See Bankr. Doc. 941 (Transcript of hearing before Judge Shiff on November 4, 2008) at p. 3, l. 4-12 and Doc. 12 (Church's Brief), p. 12, ¶ F. ("5/07 Church is finally made aware from HOP's bankruptcy counsel that HOP had filed for bankruptcy protection in 2005").  It is plausible, however, that Church may have learned of the bankruptcy proceeding by the end of June 2006, when it admittedly "became aware that HOP had acquired Beacon."  Bank. Doc. 889, p. 2, ¶ 3.

the purpose of determining whether Church's action against Beacon violated the automatic stay.[27]
As stated above, an action in violation of the automatic stay is void even if the creditor received
no notice of the stay.  Therefore, on the date HOP filed its petition, Beacon, as a debtor and/or
common entity with HOP, became protected against the continuation of the New Jersey action by
the stay.  All subsequent proceedings against Beacon in the New Jersey action became void *ab
initio*.  The default judgment was rendered in a void action and is void as a matter of law.

**C.**      **The default judgment against HOP is also void *ab initio*.**

As previously noted, by the time Church amended its Complaint to add HOP as a
defendant, the New Jersey action was void *ab initio* as the continuation of a proceeding against
Beacon in violation of the automatic stay.   Hence the subsequent addition of HOP as a defendant
could not revive the validity of the New Jersey action.

**1.**      **An action which is void cannot be revived by the addition of a party.**

An action which is void *ab initio* cannot be revived by an otherwise permissible action.
See, e.g., Hendrix v. Page, 622 N.E. 2d 564, 568 (Ind. App. 1st Dist. 1993) (where action was void
*ab initio* in violation of automatic stay, creditors' subsequent motion for relief from judgment
failed to reinstate action);  In Re Bell, 1995 WL 17819381 at *2 (Bankr. S.D.N.Y. 1995) (by

---

[27]The Court notes, however, that notice and other such equitable concerns may properly
be considered by a bankruptcy court when determining whether to grant relief from an automatic
stay or a discharge injunction.  Had Church filed a motion with the bankruptcy court to request
retroactive relief from the automatic stay, equitable factors such as notice to the creditor and
impact on the debtor may have been proper subjects of an evidentiary hearing before the
bankruptcy court.   See, e.g., In re IBI Security Service, Inc., 158 B.R. 1, 2-3 (Bankr. E.D.N.Y.
1993) (enforcement of stay considered inequitable where debtor remained "stealthily silent"
while creditor spent time and incurred expense of obtaining default judgment).

definition, a transaction that is "void" is "nugatory and ineffectual" such that no action or confirmation may cure it).

Moreover, courts have held that where an action is void in violation of the automatic stay, it is moot to consider whether that action would also violate the subsequent discharge injunction and confirmation order.  See e.g., In re WorldCom, Inc., 325 B.R. 511 (Bankr. S.D.N.Y. 2005) (where court declined to retroactively lift automatic stay (i.e., to allow creditor to reiniate violative pending action), creditor's concurrent motions for modification of debtor's confirmed plan and permission to file late proofs of claim were both moot).  An action that is void cannot be asserted against the debtor as a matter of law.  Id. at 523.

Because the New Jersey action was void and without effect, the addition of HOP could not revive its validity.  Only an order annulling and thus retroactively lifting the stay may validate an action commenced in violation of the stay.  In re WorldCom, supra, 325 B.R. at 519. [28]   In fact, even the termination of the automatic stay does not change the status of an action in violation thereof.  Id.  Specifically, it does "not reinstate or validate a stay violation."  Id. (citing In re Albany Partners, 749 F.2d 670, 675 (11th Cir. 1984)).   It merely  permits a creditor to initiate or re-initiate its action.

In the present case, Church never made a motion in Bankruptcy Court for relief from the automatic stay.   Rather, Church chose to focus on the date it filed its amendment to the New Jersey action, claiming that the automatic stay had already expired upon the entry of the

---

[28] See also In re Soares,  107 F.3d 969, 978 (1st Cir. 1997) (listing equitable factors analyzed when court exercises discretionary powers to consider request to lift stay retroactively, "sparingly" and "in compelling circumstances"); In re Stockwell, 262 B.R. 275, 281 (Bankr. D. Vt. 2001) (enumerating variety of factors to determine whether circumstances  are sufficiently compelling to warrant lifting stay *nunc pro tunc)*

Confirmation Order.  Doc 12, p. 17-20.  <u>See also</u> 11 U.S.C. § 362 (c)(2)(A)-(C).

Whether or not the addition of HOP occurred before or after the permanent discharge injunction, Church's New Jersey action against Beacon remains void in violation of the automatic stay.   A void action cannot be revived, only reinitiated with the explicit  permission of the Bankruptcy Court.

　　　　2.　　**Church's amendment of its Complaint to add HOP as a defendant in the New Jersey action also violated the automatic stay**.

Even if one deems the addition of HOP as a party in the New Jersey action to be the commencement of  a new and separate lawsuit, that suit also violates the automatic stay because it was filed prior to the "Effective Date" of the Confirmation Order.[29]  As set forth below, Church filed its amended complaint on June 29, 2006, and the Effective Date of the Confirmation Order, giving rise to the permanent discharge injunction, was August 6, 2006.[30]  During the intervening period, the automatic stay remained in full force and effect, thus rendering Church's New Jersey action against HOP void.[31]

When the Bankruptcy Court entered the Confirmation Order on June 16, 2006, it specified

_____

[29]The "Effective Date" is defined in the Reorganization Plan as "a Business Day selected by the Debtors, after consultation with the Prepetition Agent, on or after the Confirmation Date, on which (a) no stay of the Confirmation Order is in effect and (b) the conditions precedent to the effectiveness of the Plan specified in section 9.2 of the Plan shall have been satisfied or waived as provided in section 9.3."  Bankr. Doc. 328 (Plan), p. 5, ¶ 1.35. (The Court takes judicial notice of the terms of the Reorganization Plan at issue).

[30]<u>See</u>  Bankr. Doc. 950 (HOP's Motion For Order Requesting Entry of Final Decree), p.1, ¶ 3 ("The Plan went effective on August 6, 2006 when the exit financing facility was closed."). The Bankruptcy Court accepted counsel's representation that the Plan had become effective and entered the final decree to close the case on August 12, 2009.

[31]Bankr. Doc. 328, p. 30,  ¶ 10.4 (b).

that the terms of the Order would be binding on the "Effective Date."  Bankr. Doc. 584.[32]  The

Order thus stated that, as of the "Effective Date,"  the provisions of the Plan would bind any

holder of a claim against the debtors, whether or not the claim was impaired under the Plan.  Id.,

p. 19,  ¶  10(a).  Moreover, as of that date, any judgment in determination of the debtor's  personal

liability on a discharged debt would be  "null and void."  Id.,  p. 21, ¶ 12.

The Plan itself enumerated the items which had to be concluded prior to the "Effective

Date."  Bankr. Doc. 328 , p. 28, ¶ 9.2 ("Conditions Precedent to Effectiveness").  The Plan then

set forth two injunction  provisions to protect the debtor. [33]  Id., p. 30, ¶¶ 10.4 (a) and (b).

The first provision created the permanent discharge injunction, which  was scheduled to

arise on the Effective Date.  That injunction permanently barred  the commencement or

continuation of all actions or proceedings on any claim or equity interest against the debtor "from

and after the Effective Date."  Id., ¶ 10.4 (a). [34]   The second provision  was designed to protect the

debtor during the interim period  between  the entry date of the Confirmation Order and the

Effective Date.  During that time, all injunctions and stays already  in existence were to  remain in

full force and effect.   Such stays explicitly included the one arising under Bankruptcy Code

section 362, the automatic stay.   Id., ¶ 10.4 (b).

According to  the language of the Reorganization Plan and the Confirmation Order,

---

[32]The Court takes judicial notice of the Confirmation Plan.  Bank. Doc. 584.

[33]The Court takes notice that the debtor made two modifications to the Reorganization
Plan, but neither modification affected the provisions regarding the Effective Date or injunctions
arising under the Plan.  See Bankr. Doc. 538 and 573.

[34]See also Bankr. Doc. 584, p. 22,  ¶ 13 (Confirmation Order also specifies that a
permanent injunction arises to bar claims against the debtor on the Effective Date).

Church filed its amended complaint in the New Jersey action during the interim period between the Confirmation Date and the Effective Date.  During that period, the automatic stay remained in effect.  Therefore, the commencement of proceedings against HOP in the New Jersey action violated the automatic stay, rendering the action void *ab initio*.

## V.   <u>CONCLUSION</u>

When HOP filed its bankruptcy petition on September 26, 2005, the continuation of Church's New Jersey action against Beacon violated the automatic stay, rendering the action void *ab initio*.  11 U.S.C. § 362(a).  The addition of HOP as a party to a void action did not revive its validity.  The default judgment against Beacon and HOP is thus void.

Alternatively, treating Church's New Jersey action against HOP as a separate claim filed after the entry date of the Confirmation Order, the action still violated the automatic stay. Examination of the language of the Confirmation Order and Reorganization Plan reveals that the Order and ensuing permanent discharge injunction did not become operative until the prescribed "Effective Date."   The automatic stay remained in full force and effect until that date.   The commencement of the action against HOP thus violated the automatic stay and was void *ab initio*.  Hence the ensuing default judgment was void.

Accordingly, the decision of the Bankruptcy Court is AFFIRMED.

It is So Ordered.

Dated:  New Haven, Connecticut
December 17, 2009

<u>            /s/ *Charles S. Haight, Jr.*            </u>
CHARLES S. HAIGHT, JR.
SENIOR UNITED STATES DISTRICT JUDGE