# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE: HEATING OIL PARTNERS d/b/a<br><br>THE OIL EXPRESS,<br><br><br>Debtor | CIVIL CASE NO.: 3:08-CV-1976 (CSH)<br><br><br>Bankruptcy Case No.: 3:05-51271<br><br><br>__RULING ON MOTION FOR A__<br>__REHEARING OR RECONSIDERATION__ |

HAIGHT, Senior District Judge:

In an opinion reported at 2009 WL 5110838 (D. Conn. Dec. 17, 2009) ("the December 17 Opinion"), this Court affirmed the Bankruptcy Court's ruling that the default judgment obtained by Church Mutual Insurance Company ("Church") in its New Jersey action[1] against Beacon Oil Company ("Beacon") and Heating Oil Partners ("HOP") was void *ab initio*. Familiarity with the December 17 Opinion is assumed.

On December 24, 2009, pursuant to Federal Rule of Bankruptcy Procedure 8015, Church filed the present Motion For A Rehearing Or Reconsideration ("Motion"), challenging the factual basis for this Court's ruling.[2]  Specifically, Church contends that the Beacon it sued in New Jersey was a separate legal entity with no known connection to the debtor HOP.  Therefore,

---

[1]Church Mutual Insurance Company v. Beacon Oil Company, Inc., et al., Superior Court of  New Jersey, Law Division, Hudson County, No. HUD-L-3664-05.

[2]Church's Motion is confined to factual issues.  It contains no suggestion that this Court's December 17 Opinion overlooked any controlling decisions or misapprehended any point of law.

Church's argument continues, (1) Beacon should not be encompassed under HOP's voluntary petition in bankruptcy; (2) any claim asserted against Beacon will have no adverse economic effect on HOP's estate; and (3) Church could not have sued the Beacon through which HOP was doing business (i.e., HOP's "d/b/a") because a lawsuit against a trade name is a legal nullity.

The Court concludes that Church has not met the requirements for reconsideration in this case. Church has presented no matter or controlling decisions overlooked by this Court in its previous Opinion. Rather, Church now attempts to re-cast the corporate Beacon entity Church sued in New Jersey as an unrelated, shell entity - "shell Beacon" – in a transparent effort to avoid this Court's ruling that the New Jersey action against Beacon violated the automatic stay.

Specifically, Church seeks to negate its many previous assertions regarding HOP's liability for Beacon's actions or omissions in the New Jersey action. First, Church's contention that it sued shell Beacon directly contradicts its own language appearing in papers it filed in New Jersey Superior Court, the United States Bankruptcy Court, and this Court. Second, this contention conflicts with Church's repeated intention to recover from HOP's insurer, since shell Beacon would have had no coverage under HOP's insurance policies. Third, Church's contention negates its many suggestions that HOP owed Church notice of its bankruptcy. After all, if HOP is unrelated to defendant Beacon in New Jersey, HOP could not be liable for any recovery against Beacon or thus owe a potential debt in bankruptcy to Church.

In sum, upon careful review of the pleadings and prior proceedings in this action, this Court rejects Church's current claim that it actually sued shell Beacon. The Court thus denies the Motion for Rehearing or Reconsideration regarding the identity of the defendant Beacon in the New Jersey action.

2

The Court adheres to its prior ruling that in its New Jersey action, Church sued **not** "shell Beacon" but "d/b/a Beacon" (i.e., HOP doing business as Beacon), and thereby violated the automatic stay in the HOP bankruptcy proceeding.  As set forth in the December 17 Opinion, **that** Beacon Oil is encompassed with the debtor HOP under HOP's voluntary petition.   Doc. 27, Part IV. B.1., p. 13.

The Court further denies reconsideration on its ruling that the New Jersey action against HOP violated the automatic stay.   That holding was based on two independent and alternate grounds: (1) as set forth above, the action against Beacon is void *ab initio*, rendering the entire New Jersey action void from its inception; and (2) the addition of HOP to the New Jersey action violated the automatic stay that remained in operation during the interim period between the entry of the Confirmation Order and the Effective Date of the Reorganization Plan.   Doc. 27, Part IV.C.2., p. 22-24.  The New Jersey action against HOP was thus void *ab initio,* under either theory.[3]

---

[3]Church overlooks, and in fact disregards, a substantial portion of this Court's prior Opinion when it  states that the relationship between Beacon and HOP was the "essential lynchpin" in the Court's determination that the default judgment in the New Jersey action is void *ab initio*.  Doc. 29, p. 5, para. 3.  Granted, the conclusion that the Beacon at issue was the "d/b/a" of HOP did bear on this Court's ruling that the default judgment **against Beacon** was void *ab initio*.   That conclusion was **not**, however, the Court's sole basis for finding the default judgment **against HOP** void *ab initio*.  As stated above and in Part IV.C.2. of its Opinion, this Court held that the default judgment against HOP was void *ab initio* on the independent and alternate grounds that it violated the automatic stay that remained in operation during the interim period between the entry of the Confirmation Order and the Effective Date of the Reorganization Plan.  Doc. 27 , Part IV.C.2., p. 22-24.

I.      BACKGROUND

The Court hereby incorporates by reference the summary of facts presented as set forth in the December 17 Opinion.  Doc. 27, Part I., p. 1-4.

II.     DISCUSSION

A.      Church fails to meet the standard for a motion for reconsideration.

Church's motion for reconsideration fails to meet the requisite standard for granting such a motion.  Specifically, Church has presented no matter or controlling decisions overlooked by this Court in its previous ruling.  Bankruptcy courts apply the same criteria to motions for reconsideration found in Local R. Civ. P. 7 (c).[4]  *See In re Goldman,* 182 B.R. 622, 625 (Bankr. D. Mass. 1995) (reconsideration denied where movant had "not presented newly discovered evidence or raised a manifest error of law or a mistake in fact"); *accord In re Wedgestone Financial*, 142 B.R. 7, 8 (Bankr. D. Mass.1992).

A motion for reconsideration is improper if designed simply to ask a court to rethink its prior decision.  *In re Mannie,* 299 B.R. 603, 607-08 (Bankr. N.D. Cal. 2003); *see also  In re Grand Builders, Inc.*, 122 B.R. 673, 675 (Bankr. W.D.Pa. 1990) ("motion for reconsideration is not a vehicle for rehashing arguments previously made or for refuting the court's prior ruling").

_____

[4]Local Rule of Civil Procedure 7 (c) is captioned, "Motions For Reconsideration" and provides:

1.  Motions for reconsideration shall be filed and served within ten (10) days of the filing of the decision or order from which such relief is sought, and **shall be accompanied by a memorandum setting forth concisely the matters or controlling decisions which counsel believes the Court overlooked in the initial decision or order**.

Local R. Civ. P. 7 (c)(1) (emphasis added).

A motion for reconsideration should not be used to  raise issues or cite authorities that the movant could or should have presented prior to the court's ruling.  *In re Grand Builders, Inc.*, 122 B.R. at 675.

Judged by these familiar standards, Church's motion is clearly deficient.  Rather than present any points of law or fact which this Court allegedly overlooked or misapprehended, Church merely reasserts and rehashes its previous arguments about the relationship between Beacon and HOP.    Upon careful review, as set forth below, the motion is denied.

B.    Church's assertion that the defendant Beacon is unrelated to HOP strains credulity.

Church's main basis for seeking reconsideration is its claim that the Beacon it sued in New Jersey was not the "Beacon Oil" through which HOP conducted business (i.e., not "d/b/a" Beacon) but rather the "separate legal entity" or  "shell Beacon" that remained after HOP had purchased all of Beacon's assets and its trade name in 2002.[5]  Doc. 29, p. 2, para. 3.  Church thus now broadly adopts the words of "HOP's experienced bankruptcy counsel . . . that it would be fine for Church to sue Beacon and obtain a judgment against it with no ramifications with respect to HOP."  *Id.*  "A judgment against Beacon would have no effect at all on HOP or the assets of the bankruptcy estate."  *Id.*   In adopting HOP's counsel's statement, Church has seemingly come to agree with HOP's hypothetical that Church mistakenly sued the shell entity which remained after HOP purchased all of its assets and trade name in 2002.

_____

[5]That seller has been referred to throughout these proceedings as a "shell entity," with no assets.  Beacon, the remaining shell,  was legally obligated to change its name pursuant to its 2002 sale agreement with HOP, but the record does not reflect whether it in fact made that change.  Bankr. Doc. 941, p. 10, l. 12-14.  Hence, there appears to remain two Beacon Oils, giving rise to whatever potential confusion exists in the case.

Church hopes that, in alleging that Beacon is a separate entity, unrelated to HOP, Church can avoid the result that its action against Beacon violated the automatic stay and is thus void *ab initio*.[6]   However, given its many contrasting statements that HOP is liable for the actions or omissions of Beacon, Church's present assertion, born of strategic necessity, that it sued the "wrong" Beacon appears disingenuous.[7]   The Court declines to ascribe to Church's counsel an intent to sue a shell entity having nothing to do with the installation of the heating systems at issue in the New Jersey action.[8]   It would have been fruitless to purposely sue a company with "no assets" and no possible insurance ties to HOP.   A default judgment in such circumstances would be a Pyrrhic victory, and one unlikely to be pursued by Church.

_____

[6]*See* Doc. 27, Part IV. B.1., p. 13.

[7]This Court adopts HOP's characterization of the shell entity as the "wrong" defendant because Church expressly sued HOP as the "successor in interest to  Beacon Oil" and "liable for the acts or omissions of its predecessor."  Bankr. Doc. #889-1, Exh. A, p. 20, ¶8.   However, the record reflects no continuing relationship between the shell and HOP.

Furthermore, Church has voiced its clear intention throughout these proceedings to recover from HOP's insurers.  If Church sued the shell entity, that shell entity is unrelated to HOP and thus not covered by the insurance contracts between HOP and AHA.  Moreover, Church concedes that the shell has no assets.  Recovery against such an entity is thus unlikely.

[8]Referring to the shell entity, Church points out that  "[t]here is certainly no evidence in the record in the Bankruptcy Court. . . that Beacon ever was or is a subsidiary of HOP." Doc. 29, p. 2, para. 2.  On the other hand, and as a point of fact, Beacon (as the"d/b/a" of HOP) was referred to as a "subsidiary  of HOP" by AHA's attorney, Susan Gummow.  *See*, *e.g.*, Bankr. Doc. 893, p. 5, l. 14-16 ("The lawsuit [in New Jersey] was originally filed against Beacon Oil, which is a **subsidiary** of Heating Oil Partners") (emphasis added).   Church, although stating that Beacon was "not the debtor," did not address Ms. Gummow's characterization of Beacon as a subsidiary .  *Id.* p. 9, l. 21-22.  However, whether or not the Beacon operated by HOP had been a subsidiary, a corporation in which HOP had a controlling share  (as opposed to a trade name or "d/b/a"), a suit against it, in this case, would be protected by the automatic stay since it had such unity of interest with HOP that there would be a direct adverse economic consequence for HOP's estate.  *See* Doc. 27, Part IV. B.2., p. 14-15.  So the fact that Beacon was a d/b/a, as opposed to a subsidiary, has no effect on the outcome of this Court's ruling.

C.    Church's contention that HOP has "no known connection" with the defendant Beacon
      contradicts its prior language in its papers and hearings that HOP was liable for Beacon's
      acts or omissions.

      1.    Church claimed that HOP was "liable for the acts or omissions" of Beacon in its
            Amended Complaint in the New Jersey action.

By claiming that it sued the separate or shell entity, Church now contradicts the language

of its own Amended Complaint in the New Jersey Action that "Heating Oil Partners is the

**successor in interest** to Beacon Oil and is **liable for the acts or omissions** of its predecessor."

Bankr. Doc. #889-1, Exh. A, p. 20, ¶ 8 (emphasis added).   The statement that HOP is liable for

Beacon's acts or omissions directly contradicts Church's present claim that "Beacon is a separate

legal entity, apparently without any assets, but which has no known connection to the debtor

HOP."  Doc. 29, p. 3, para. 1.

Under the law of the Second Circuit and New Jersey state law, the applicable law in the

New Jersey action, a company is a "successor in interest" for liability purposes only if (1) it

agreed to assume them; (2) the two corporations merged; (3) the purchaser is simply a

continuation of the seller; or (4) when there is fraud.  *LiButti v. U.S.*, 178 F.3d 114, 124 (2d Cir.

1999) (*citing Ramirez v. Amsted Industries*, 86 N.J. 332, 431 A.2d 811, 815 (1981)).

In stating that HOP is the successor in interest to Beacon, and in the absence of any proof

of fraud, Church may wish to imply that HOP merged with Beacon and/or continued the business

of Beacon.  The record is clear, however, that HOP did nothing of the kind.  First, HOP did not

assume the liabilities of the previous shell Beacon.  Doc. 893, p. 13, l. 23 to p. 14. l. 1;  Doc. 26,

p. 48, l. 14-16.   Rather, as Church asserts, HOP has no legal connection to that former shell

Beacon.

Second, HOP then operated the d/b/a Beacon using the purchased assets.   If HOP, doing business as Beacon,  performed the installation and maintenance of Vroom's boiler systems, chimney, and flue exhaust pipes, the d/b/a Beacon was the one referenced by Church in its New Jersey action.  Doc. 889-1, Exh. A, p. 19-20, ¶3.   After all, the d/b/a Beacon would have been the entity whose acts or omissions allegedly led to the Vroom fire and thus the only Beacon for which HOP could potentially be held liable.

       2.      <u>Church repeatedly argued that it was entitled to notice of HOP's bankruptcy on the grounds that HOP owed Church a potential debt based on Beacon's acts or omissions in performing heating work for Church's subrogor, Vroom.</u>

Church's argument that Beacon has no relationship with HOP undercuts its many previous statements before the Bankruptcy Court and this Court that HOP was required to give Church notice of HOP's bankruptcy because Church was a "known creditor" of HOP by virtue of its New Jersey action against Beacon.  *See* Bankr. Doc. 941 (Transcript of hearing before Judge Shiff on November 4, 2008) at p. 3, l. 6-12 and p. 6, l. 12-13; and Doc. 12 (Church's Brief), p. 17-20.[9]  If, however, Church were correct that HOP has no relationship with Beacon, any

---

[9]Section 521 of Title 11 provides that the debtor shall file a list of known creditors in order for the discharge injunction to apply to those creditors' claims.  11 U.S.C. § 521 (a)(1). The confirmation order then discharges the debtor from any debt that arose prior to the confirmation date.  11 U.S.C. § 1141 (d)(i)(A).

Applying the principle of due process under the Fifth Amendment, Courts have held that a debtor must notify a creditor of its Chapter 11 proceeding in order for the creditor's claim to be discharged in bankruptcy.  *See, e.g.*, *In re Maya Construction Company*, 78 F.3d 1395, 1399 (9th Cir. 1996);  *Reliable Electric Co., Inc. v.  Olson Construction Company*, 726 F.2d 620, 622-23 (10th Cir. 1984).  *See also Union Hospital Association*, 226 B.R. 134, 138 ("for a particular debt to be discharged, one predicate must be met - the creditor must have been given notice of the bankruptcy and of the relevant bar date sufficient to satisfy due process") (*citing Greyhound Lines, Inc. v. Rogers*, 62 F.3d 730, 735 (5th Cir. 1995) ) .

claim arising from Beacon's acts or omissions would not create a debt for HOP.  Hence HOP

would have no conceivable duty to give notice to Church of a non-existent claim.[10]

        3.      <u>Church explicitly sought recovery from HOP's insurers in a separate New Jersey
action, alleging that the insurers are obligated to satisfy the default judgment
against Beacon.</u>

Church's claim that it sued the shell Beacon "with no known connection to the debtor

HOP" contradicts the Complaint it filed in its New Jersey action against AHA as the insurer of

Beacon and HOP.[11]   In that complaint, Church alleges that "AIG/American is obligated to satisfy

the [default] judgment against Beacon Oil and Heating Oil Partners [in the New Jersey action]

regardless of whether the personal liability of Beacon Oil and/or Heating Oil Partners has been

discharged in bankruptcy."[12]   Bankr. Doc. 889-1, Exh. A, p. 11, ¶ 49  .  At various points,

Church even appears to refer to Beacon and HOP as one entity as "Heating Oil Partners/Beacon

---

    [10]HOP did, in fact, give actual notice of bankruptcy to Vroom, Church's subrogor, for any
potential claim arising from work performed by d/b/a Beacon.   HOP served Vroom with notice
of the bar date for creditors on or about June 2, 2006.  Bankr. Doc. 531 (Certificate of Service
Re: Debtors' Notice of Bar Date for Creditors), and Bankr. Doc. 906-3, Exhibit C (p. 15 of 17).
Notice, however, is not required for an automatic stay to become effective.   For supporting case
law, *see* Doc. 27, Part IV.B.4.,  p. 18.

    [11]That complaint states, in relevant part:  "The proceeds of the AIG [of AIG/AHA] policy
constitute a debt due and owing to Beacon Oil Company and Heating Oil Partners. . ."  Bankr.
Doc. 889-1, Exh. A (Complaint in <u>Church Mutual Insurance Co. v. American Home Assurance
Company et al.,</u> New Jersey Superior Court, Hudson County Law Division, dated July 22, 2008),
p. 6, ¶ 25.

    [12]That statement actually implies that Church acknowledges that the debts of Beacon Oil
and HOP are subject to bankruptcy proceedings.

Oil Company." *Id.*, p. 15, ¶¶ 9-10. [13]

If , however, the Beacon that was sued had been the shell entity, HOP's insurance contract with AHA would not cover that shell.  Hence Church would not be entitled to the AHA insurance proceeds on the basis of a default judgment against shell Beacon.

D.    Church's argument that the default judgment against Beacon will have no impact on
      HOP's estate contradicts Church's express wish to recover from HOP's insurers.

Church makes a  secondary argument that the default judgment against Beacon should stand because that judgment will have no effect against HOP's assets or estate.   Specifically, Church waives its right to enforce any judgment against HOP's estate. Doc. 29, p. 3, para. 2-3. Church has, however, stated repeatedly that it wishes to selectively enforce judgment against Beacon's and HOP's insurers, specifically AHA.[14]  *See, e.g.*,  Bankr. Doc. 889-1, Exh. A, p. 11, ¶ 49. (New Jersey Complaint against AIG/AHA, in which Church alleges that "AIG/American is obligated to satisfy the [default] judgment against Beacon Oil and Heating Oil Partners [in the New Jersey action] regardless of whether the personal liability of Beacon Oil and/or Heating Oil Partners has been discharged in bankruptcy").  In seeking such insurance recovery, Church once

---

[13]Similarly, Beacon and HOP were treated as the same entity when the New Jersey default judgment was mailed to Beacon and HOP at the same address.  *See* Bankr. Doc. 941 (Transcript of Hearing before Judge Shiff, November 4, 2008),  p. 8, l. 21-25.

[14]Throughout the proceedings, Church has stated that it does not and did not desire to participate in HOP's bankruptcy proceedings but rather seeks recovery from its insurers. Bankr. Doc. 902, p. 11, l. 23-25  ("We are not looking to participate in the [bankruptcy] case.  All we want to do is satisfy the claim with the available insurances.");  Bankr. Doc. 893, p. 10, l. 6-13 (Church "simply wants to satisfy its claim, if any, against the available insurance proceeds); and Bankr. Doc. 941, p. 3,  l. 16-19 (Church's "sole interest is in pursuing available insurance coverage by insurance carriers for the parties named in its state court case, which were Beacon Oil Company and Heating Oil Partners").

again implies that the true defendants in the New Jersey action are d/b/a Beacon and HOP. In that case, Church would expect to recover from HOP's insurers, creating an impact on HOP's estate.

The Bankruptcy Court entered an Assumption Order, ordering HOP to comply with its obligations under its insurance policies with AHA. Bankr. Doc. 895 (Assumption Order). A recovery against the insurers thus triggers HOP's duties under those policies, including a $250,000 self-retention clause referenced by AHA's and HOP's counsel throughout the proceedings.[15] Bankr. Doc. 893, p. 4, l. 17 to p. 5, l. 5; p.11, l. 18-24; and p. 13, l. 7-11 and l. 14-22; *see also* Doc. 26, p. 27, l3 to p. 28, l. 21. In sum, a default judgment against d/b/a Beacon would trigger HOP's duties under its insurance policies and thus impact HOP's estate.[16]

E. Church's claim that it could not have sued HOP under its trade name is unpersuasive and non-determinative on the issue of Beacon's identity.

Church's third claim hinges on the proposition that it is legally impossible for any party to assert a claim against a "trade name" because a trade name "is a fictitious entity with no legal existence." Doc. 29, p. 3, para. 4. A lawsuit or judgment obtained against a trade name is thus a

---

[15]The Court further notes that equitable considerations regarding the impact on the debtor's estate are properly presented in Bankruptcy Court when said court is requested to lift the automatic stay or modify a discharge injunction. This Court's issue on appeal, however, was whether any such stay or injunction was violated, rendering the entire state court action void *ab initio.*

[16]On a procedural note, this Court notes that Church's offer to waive recovery against HOP overlooks the fact that such waiver as to judgment can only be effective if it occurs **prior** to the entry of judgment. Once entered, a Court's judgment cannot be voided by the wish of one of the parties. In general, a plaintiff may be precluded from voluntarily dismissing an action after it has proceeded to a determinative adjudication. 27 C.J.S. Dismissal and Nonsuit § 6 (2009). At that point, the parties may choose to enter an agreement waiving the right to appeal or releasing errors, but not invalidating the judgment itself. 4 C.J.S. Appeal and Error § 272 (2009).

"legal nullity."  *Id.*   In so stating, Church attempts to bolster its contention that it did not sue the d/b/a Beacon – i.e., the trade name.[17]  Otherwise, its New Jersey action against Beacon would be a legal nullity.

As Church contends, a court is without subject matter jurisdiction if the plaintiff is not a legal entity and thus lacks standing to bring a lawsuit.  "[I]n order to confer jurisdiction on the court the plaintiff must have an actual legal existence, that is he or it must be a person in law or a legal entity with legal capacity to sue."  *GMA Yacht Sales v. Skagit Marine Distributing, Inc.*, 2000 WL 1475551, at *1 (Conn. Super. 2000).  Generally, an action may not be maintained with a mere trade name or with no legal personality as plaintiff.  *Id.*; *see also  America's Wholesale Lender v. Pagano*, 87 Conn. App. 474, 477, 866 A.2d 698 (2005).   Similarly, an action may not be maintained against a trade name as an entity because such a proceeding is a nullity.  *GMA Yacht Sales*, 2000 WL 1475551, at *1; *see also  American Rental Centers v. ITT Hartford Ins. Group*, 8 Conn. L. Rptr. 515, 1993 WL 88387,  at *1 (Conn. Sup. 1993)).

In its voluntary petition, HOP listed "Beacon Oil" as a trade name.[18]  HOP's counsel also

---

[17]Church thus avers:

> Church Mutual never attempted to sue the trade name or assumed name of "Beacon Oil," which is one of many fictitious names utilized by HOP in the conduct of its business; rather Church Mutual commenced its original lawsuit against the separate legal entity known as the "Beacon Oil Company" which did and continues to enjoy a separate legal existence.

Doc. 29, p. 5,  para. 1.

[18]Federal Rule of Bankruptcy Procedure 1005 dictates that the debtor must list on its petition "all other names used within six years before filing the petition."  By listing these other names, the petition puts parties in interest on notice of the debtor's bankruptcy "even if those parties knew the debtor by a trade name."  *In re McMahon*, 383 B.R. at 475; *see also In re Erwin*, 2003 WL 21513158, at *10 (Bankr. D. Kan. 2003) (purpose of disclosing trade names is

repeatedly confirmed on the record that HOP operated as "Beacon Oil."  Doc. 893, p. 13, l. 23 to

p. 14. l. 1;  Doc. 26, p. 48, l. 14-25.  HOP's prior descriptions do not, however, determine the

present issue.

Church now asserts that its action in New Jersey was clearly against the shell Beacon -

i.e., not d/b/a Beacon - or else that action would have been a legal nullity.  There is no evidence,

however, that the New Jersey Court ever addressed the issue as to whether Church's action was

brought against HOP's trade name.  As a debtor in a Chapter 11 proceeding, HOP did not defend

itself in the New Jersey action in any way, resulting in the default judgment.  Thus, absent

objection from HOP, it is unlikely that the issue arose as to whether Church could proceed

legally against HOP's trade name.  Without any legal determination on the issue, Church's

contention offers no meaningful support for its claim that it actually sued the shell Beacon.[19]

Furthermore, this Court need not address the issue of the possible nullity of the New

Jersey action against HOP's trade name because that issue is not before this Court.   The issue

before this Court is whether Church's New Jersey action against Beacon is void *ab initio*.   Where

Church sued the d/b/a Beacon, this Court held that the New Jersey action is void in violation of

the automatic stay.  The possibility that the action was also a legal nullity does not alter that

---

to "alert creditors who may have done business with a debtor" under a different name).   In
addition, by listing names as d/b/a's on one's petition, one "is verifying that these listed names
are in fact d/b/a's," or "trade names."  *Id.*

[19]Church's claim that an action against d/b/a Beacon would be a legal nullity also raises
the question whether Church at any time before the entry of default judgment became aware that
it was suing the "wrong" entity in the New Jersey action - i.e., the shell Beacon.  If so, one
wonders if and when Church took measures to bring that fact to the New Jersey Superior Court's
attention and/or correct the error; but the resolution of the present motion does not require that
the question be pursued.

13

holding.

III.    <u>CONCLUSION</u>

Church's Motion for Rehearing or Reconsideration presents no new evidence or relevant decision overlooked by this Court.  Rather it brings to mind the pastoral poetic verse of Oliver Goldsmith:

> In arguing too, the parson own'd his skill,
> For e'en though vanquish'd, he could argue still . . . .

*The Deserted Village*  (1770) l. 211.

And argue Church does, attempting to revive the issue of whom it actually sued in the New Jersey action: (1) the shell Beacon, the seller or shell entity remaining after HOP's purchase of its assets and name in 2002; or (2) the "d/b/a" Beacon through which HOP did business after the 2002 sale.   Upon careful consideration of  the pleadings and record in all prior proceedings, this Court once again finds that Church sued the latter, the d/b/a Beacon.

It would have been unjust, illogical and practically fruitless for Church to obtain a judgment against shell Beacon.  By Church's own words, that entity has no assets, no relationship with HOP, and is not covered by HOP's  insurance, from which Church zealously seeks to recover.   Instead, Church sued the d/b/a Beacon operated by HOP after the 2002 sale. The default judgment in New Jersey thus remains void *ab initio*  in violation of the automatic stay that arose when HOP filed its voluntary petition.

Finally, the Court denies Church's Motion for Rehearing or Reconsideration with respect to the ruling that the default judgment against HOP is also void *ab initio*.   In so holding, this Court wishes to disabuse Church of its erroneous notion that the relationship between Beacon

14

and HOP was the "essential lynchpin" of the Court's prior ruling.  Doc. 29, p. 5-6.  In formulating such a mischaracterization, Church clearly overlooked a substantial portion of this Court's Opinion.  *See* Doc. 27, p. 22-24.

The Opinion specified that, whether or not the action against Beacon violated the automatic stay, the **action against HOP violated the automatic stay on independent grounds**. That action was commenced against HOP during the interim period between the entry of the Confirmation Order and the Effective Date of the Reorganization Plan.  During that time period, the automatic stay remained in effect, pursuant to the express language of the Confirmation Order and Reorganization Plan.  *Id.*, Part IV.C.2., p. 22-24.   Therefore, regardless of the existence or identity of any other defendant in the New Jersey action, the action against HOP is void in violation of the automatic stay .

Any argument regarding the identity of Beacon - even were it not spurious – could not result in a different outcome regarding HOP.  The default judgment against HOP is void *ab initio*.[20]

Accordingly, the Motion for A Rehearing or Reconsideration is DENIED.

It is So Ordered.

Dated:  New Haven, Connecticut
         February 5,  2010

                                        /s/Charles S. Haight, Jr.
                                   CHARLES S. HAIGHT, JR.
                                   SENIOR UNITED STATES DISTRICT JUDGE

----

[20]The Court further notes that even if the discharge injunction had become effective on the date the Confirmation Order was entered, the New Jersey action against HOP would still be void as a judgment in determination of the debtor's personal liability on a discharged debt.   11 U.S.C. § 524(a).   HOP filed its voluntary petition thirteen days before Church amended its Complaint to add HOP to the New Jersey action.  Moreover, HOP gave actual notice to its potential creditor Vroom, the subrogor of the claim at issue.